Thank you, Your Honor, and may it please the Court, I'm Michael Wolfe for the Plaintiffs' Appellants in this case. The first issue is the forfeiture argument by Edison. Edison's forfeiture argument is based on a false premise. Edison contends that it has always agreed that there is a basic and undisputed ongoing duty that fiduciaries have to monitor trust investments and remove imprudent ones, and therefore plaintiffs were free to argue a breach from failure to remove the imprudent retail mutual funds that were first put into the plan before 2001. That premise is false because Edison, as we've pointed out throughout our briefs, has consistently maintained that there's not an unlimited duty to remove imprudent investment options, but instead that that duty is limited to change circumstances. In other words, Edison stated on page 18 of its brief in this Court on the first appeal, plant fiduciaries do have a continuing duty under ERISA to monitor investment options for change circumstances, rendering a once imprudent investment now imprudent. But plaintiffs here allege no change circumstances, and that is a position that Edison has maintained both in the trial court, in this court, and in the proceedings before the Supreme Court on the petition for writ of certiorari. And the district court accepted that interpretation of the limitation statute, applying the Phillips decision in this course and the continuing violation doctrine theory to this case to hold that when there are a series of breaches that are of the same character, if those breaches, the first of those breaches occurred outside of the limitations period, the latter of those breaches, even within the limitations period, is not actionable. And the only, Your Honor? I was about to just inquire, is it your position that you made the presentation specifically or that it is implied? The limitation to change circumstances is something that Edison has repeatedly stated throughout, and that was our understanding of the court's summary judgment order. And that is, although the court didn't use change circumstances, that phrase specifically in its summary judgment order, that naturally arises from its decision in the language they use. So the court said that when there's a series of breaches of the same character and they started outside the limitations period, they extend within the limitations period, the latter ones are not actionable under the 6-year statute. And instead, there has to be something new that arises to cause the fiduciaries to go through a whole due diligence review process. Well, I guess my formal question is whether you preserved the claim that the defendant or that Edison failed to monitor. Yes, Your Honor, we did, because we have consistently argued throughout this case, both at the District Court, in this Court, and in the Supreme Court, that Edison has a duty to remove imprudent investment options. And that duty exists regardless of when the options were first put into the plan. That necessarily entails, as part of your monitoring of planned investments— No, but the answer to my first question, that it's implied, in effect. I suppose that's correct, Your Honor. You didn't make the express argument. Your argument is that, in effect, you didn't have to because it's implied in terms of Edison's duty. Duty to remove imprudent investment options. The issue of whether Edison was monitoring these planned investments isn't really in dispute. Edison admits that it's monitoring planned investments on a quarterly and monthly and also annual basis. Edison just says that all we're monitoring for, though, is for changed circumstances. The fund underperforms, there's a change in management that significantly alters the fund, such that it's as if it's a new fund in this plan. As I understand it, you're claiming that you were precluded by the District Court from making the duty to monitor argument, if you will. But is it not inconsistent for you to claim that the District Court stopped you from such an argument? That is, that Edison violated its fiduciary duty to monitor the retail class mutual funds when, it is clear, you made just that same kind of argument for the money market funds? Right, Your Honor. That is not the argument we made regarding the money market funds. So the claim regarding the money market funds, we made a number of claims regarding that particular breach. One of which was they should have used a cheaper alternative type of investment, and that was a stable value fund. And we contend that they should have done that throughout the limitations period. And the District Court held, no, the decision to go with the money market fund instead of a stable value fund was made outside of the limitations period, and therefore the statute bars that claim. So where in the record do I find where you made that same argument, direct or implied, with respect to the mutual funds? And the duty to monitor and the duty to acquire, I guess, a cheaper value than the retail funds? Your Honor, the argument that was made regarding the money market fund at trial was just Edison's mismanagement of that particular investment option. Because Edison engaged in yearly negotiations for fees as to that option, and plaintiffs contended that they didn't negotiate the fees low enough or have a rate, a schedule that had declining fees as the asset increased. So that was just as to how they actually functioned with that money market fund. The claim regarding the mutual funds is that they didn't even consider and didn't switch to the institutional share classes at any time during the limitations period. That's something that we argued going into summary judgment, and that's something that the District Court held was barred by the limitations statute. Because the District Court believed once Edison decides to go with outside the limitations period, it doesn't have to reconsider whether to go to the institutional share class. Where do I find in that order, the summary judgment order, your argument that you were precluded from making that very argument? Well, Your Honor, that's the natural result of the language that the Court used in its summary judgment order. Give me the page, the slide. Tell me where I find the sentence, the paragraph that says you cannot pursue that kind of a claim here, when in fact you were pursuing a type of claim, and that is that there were significant events that should have put the plan on notice that should have, therefore, put the plan into a position to find out that they should have had the institutional shares at lesser cost than the retail. Well, Your Honor, we weren't pursuing the, you have to remove the imprudent retail mutual funds claim at trial because it was precluded by the summary judgment order. And the District Court was— No, your argument hinges on the summary judgment order. Your position is the summary judgment order precluded us from making this argument at trial. Yes, Your Honor, because that's the natural consequence of that order in applying Phillips and the continuing violation theory to this case. What do you say when defendants argue that you mischaracterized the exchange between the district judge and your expert, Mr. Pomerantz, that the district court did not preclude? In fact, the defendants would argue that the judge invited you to claim that, and I'm quoting now from that exchange between the district judge and your expert, due diligence should be undergone with some frequency. But that is not the, quote, thrust, end quote, of your expert testimony. That's part of the dialogue between the district judge and your expert, who, in fact, as I read that exchange, distanced himself from that theory and relied upon solely the significant change theory to create a new breach of fiduciary duty. Why is that summary incorrect? Because, Your Honor, what the district court judge was doing there was making sure that plaintiffs and their expert weren't straying beyond the limits of the summary judgment order. You don't – I don't read that in there. You're hypothesizing that. I'm not, Your Honor. I'm interpreting the events as they happened to us, and we were there. Now, perhaps Judge Wilson can give an interpretation of what he was getting at there. But what we do know, Your Honor, is that Judge Wilson had no hesitation to modify plaintiffs' claims sua sponte as he saw them fit due to what was in the record. So in other words, he opened the doors wider for you to pursue additional claims. No, that's not true, Your Honor. The judge allowed – the judge amended plaintiffs' claims sua sponte to include imprudence regarding the mutual funds, in addition to the loyalty claim that plaintiffs understood from the summary judgment order that that's all they were allowed to pursue in this case, and gave defendants the opportunity to reduce additional evidence on that on the judge's own decision. So when the judge decided that, yes, a claim is in the case, the judge was very clear when he was making that decision and saying, I'm inviting you to pursue that claim. And the judge did not do that regarding the failure to remove the pre- 2001 retail mutual funds. So our interpretation of the order and that exchange was perfectly reasonable. And if Judge Wilson intended to open the door to allow us to say, argue, despite Phillips and the continuing violation doctrine, that Edison should have removed these pre-2001 retail mutual funds because of the institutional share class, Judge Wilson certainly would have said so, just like he expressly did at trial and in a subsequent order regarding the prudence claim. And I would also like to point out that Edison understood that was the effect of the summary judgment order also, because Edison, after the evidence was put on regarding our attempts to argue that as to three of these pre-2001 funds, there was some change in circumstances sufficient enough that Edison should have reconsidered the institutional share class. What Edison said was not plaintiffs chose not to argue this other aspect of their claim. What they said was plaintiffs' inclusion of these funds attempts to circumvent the court's ruling regarding the statute of limitations. This is in their supplemental trial brief, additional excerpts of record, page 63. The court expressly held in its first summary judgment ruling that plaintiffs could not revisit the prudence of selecting mutual funds that became part of the plan's investment lineup more than six years prior to the filing of the complaint. Well, there's a difference between selecting at the outset and then monitoring at a later date, right? Perhaps, Your Honor, but would you agree that monitoring is included within the phrase maintaining those shares, retaining those funds, which is what we argued. Because Edison then says, by challenging the prudence of maintaining retail share classes of the three name change funds, plaintiffs had done what the court has forbidden by attempting to resurrect claims that were properly held barred by the six-year statute of limitations. Now, that indicates that Edison understood the summary judgment order to preclude any argument that Edison had to go to the institutional share class of those funds absent change circumstances. In fact, what Edison was saying, the summary judgment order meant that what plaintiffs were arguing, change circumstances, weren't enough change circumstances to cause them to have to remove those funds. And that's Edison saying what the law is, what the summary judgment order was, not plaintiff's interpretation, not the theory that plaintiffs decided to go ahead with at the trial. And, Your Honor, I would also like to point out that Edison admits that its process for monitoring investment options excluded any consideration of alternate share classes. Edison only looked at change circumstances under performance or a deterioration in the fund's financial condition. And they said the reason they did that was because we wanted to avoid participant confusion. Changing share classes would confuse participants. The district court rejected that argument as being illogical and contrary to the facts as to the post-2001 claims. And I would invite Your Honors to look at the transcript of the Supreme Court argument where the Supreme Court justices rejected that argument. Chief Justice Roberts, on page 49 of that transcript, said, how is there investor confusion? It seems to me one sentence is, one sentence saying, well, we have been paying 0.3 percent. This is 0.2 percent. That's why we're changing. They're not going to, you know, go running out in the hall screaming that there's confusion about that. Justice Kagan, on page 50, said, the day when you get from your mutual funds a notice that says, by the way, you're a preferred investor. We're switching to you. We're switching you. It's the exact same fund under a different name. Now you don't pay fees. That's a red-letter day for an investor, Justice Kagan said. So the reason why Edison's arguing for change circumstances is the only thing that compels them to switch to a cheaper share class is because that was their investment policy. They limited their duty to monitor, to monitor only for change circumstances, and the Supreme Court has said that that's improper. And unless your honors have any other questions, I'd like to reserve the balance of my time. You may do so, counsel. Thank you. We'll hear from Edison. Good afternoon, your honors. May it please the court, John Hacker for Edison. The issue here is obviously not about what we said, but what the trial court ruled in the summary judgment motion, and I think there's an important concession from Mr. Wolfe this afternoon, although he has to concede it, which is everything turns on what the summary judgment order actually said. And the order, obviously, on its face, and whether explicit or implied, did not deny plaintiffs the right or the opportunity to make the argument they now want to pursue, which is that Edison employed an imprudent process for periodically reviewing funds added to its 401k lineup before the repose period began on August 16th of 2001. And in fact, as your honor pointed out, plaintiffs did pursue that exact argument at trial as to the money market fund, which was added in 1999, just like the mutual funds that they're talking about. They argued that Edison's periodic review process should have identified imprudent fees in that fund. That was their trial argument, that fees were too high during the repose period, and that Edison breached his duty to monitor those fees and to renegotiate and seek better fees during the repose period. It is untrue that Edison, this was a claim about Edison annually renegotiating its fees and attacking the annual renegotiations, because Edison didn't annually renegotiate them. Edison renegotiated the fees if and when Edison's periodic review process identified a need to renegotiate them and find and get lower fees elsewhere. That is exactly, exactly, your honors, the kind of argument they could have made with respect to the mutual funds with the share classes, and they chose not to. The district court never told them they couldn't. Here's what they said to the U.S. Supreme Court, your honors. The judge's summary judgment order said, I'm not hearing anything about the 1999 funds unless you can tell me that the changes were so significant that the change would warrant a review of the type you would do from an initial review. The summary judgment order, your honors, says nothing of that kind. The words significant changes don't appear in the summary judgment order. The words initial review do not appear in the summary judgment order. They weren't in the brief that we filed seeking summary judgment to the court. It's simply not there. Limitations is discussed in just two places in the summary judgment order. The first is at excerpts of record, page 18 to 19, and there's only one relevant paragraph where the court actually turns to the court's analysis of each party's summary judgment arguments after setting up the legal background and referring to the Phillips doctrine, the Phillips rule, which I'll talk about in a moment. But the relevant paragraph is at the bottom of the 18 when it explains that both parties are wrong about their summary judgment arguments. He says, neither party has satisfied its burden to alter the statute limitations from the standard six-year time limit. Plaintiffs, here's the relevant point, have not shown defendants made any misstatements or actively concealed any breaches of fiduciary duty, which would toll the statute beyond six years. That's all he says about it there because their only argument, their only argument at summary judgment was that there is no limitations period because the exception for fraudulent concealment applies. And you can look at their argument and see, and you can look at our argument and see. That's the only reference to the plaintiffs, what they would have to do at trial or what they hadn't shown at the summary judgment stage at that point in the opinion. Then later, the judge says, I'm going to talk about these issues later. The only other reference appears at ER 93 to 94, which is entitled statute of limitations. So if anybody wanted to know what the summary judgment order told the plaintiffs they could do at trial or said they could not do more relevantly, you would read this paragraph. So we can just read it. Plaintiffs' claims for breach of the duty of prudence are barred in many respects by the six-year statute of limitations, which began on August 16, 2001. So I would wonder, well, why are they barred? For example, the judge explains for their benefit. Roberts. What page are you on now? Fisher. I'm sorry. ER 93? Roberts. 93? Fisher. Yeah. It's page 88 of the summary judgment opinion. For example, it is undisputed that the initial decision to add retail mutual funds, including the sector funds, as an option in the plan was made in 1999 and 2000. Initial decision. Mr. Ertel, an Edison employee, made the decision to maintain the money market fund instead of use a stable value fund in 1999. That's the point Mr. Wolf just pointed out. So the judge says that initial decision can't be challenged. Furthermore, the Edison stock fund was established as a unitized stock fund as early as January 25, 2001. If there's any doubt, he ends the paragraph with this These decisions are barred by the statute of limitations. These decisions, the initial decisions, one of which was the mutual, the money market fund. What happens to the money market fund at trial? The plaintiffs didn't say, well, we can't talk about the money market fund. The plaintiffs instead said, as I've already alluded to, that the fees during the reposed period were too high and that Edison should have conducted a better periodic review and obtained lower fees in the money market fund. Nothing in that summary judgment order I just read in any way suggests they couldn't have made that argument. Now, Mr. Wolf points to the prior paragraph where the judge is summarizing law and the Phillips rule says that a failure to rectify an initial breach is just a breach of the same kind, which is of course true and is true today. The mere failure to cure, to do something earlier, isn't itself the right kind of claim because the Supreme Court itself said in this opinion, in this case, it is a different duty. It is a separate and distinct duty that occurs at the monitoring stage. And that's what plaintiffs were absolutely free to assert and to challenge at trial, as we know from the exchange with Mr. Pomerantz and the court. First of all, they did challenge it with respect to the money market fund. But then when we get to Mr. Pomerantz's testimony, trying to explain what the plaintiffs were saying, why were the plaintiffs upset? What was their claim? What was their challenge with respect to— What do you make of that colloquy with Judge Wilson? And if it's unclear to us, is not the appropriate remedy to remand for him to tell us what he meant instead of us trying to guess what he meant? The answer is no, I think it's not, Your Honor. That's not the appropriate remedy because what matters is the objective. We heard from Mr. Wolf today. What matters is what the summary judgment order actually did as opposed to what the judge sort of may have been thinking. And the judgment absolutely did not preclude them from making this argument. But there's also no ambiguity in that exchange. There's no sense in which—and I think the plaintiffs are suggesting the judge was trying to trick the plaintiffs or trick Mr. Pomerantz into fessing up that this was really his theory. It's exactly the opposite. The entire tenor of it is exactly the opposite. He says to Mr. Pomerantz, not, are you really saying or what's—he says, why is it relevant as to whether it was a name change or the fund remained the same? Isn't it part of your thesis that even if a mutual fund was in the plan prior to August 2001 and the fund had purchased the retail shares and the retail shares, class shares, were more expensive fee-wise than the institutional share class, all things being equal, that within the statutory period, that is August 2001 forward, that the plan was obligated to exchange that for the institutional share? So let me—sorry to interrupt you. No, no, please. I've read it a few times. So maybe you're both wrong. I don't know that Judge Wilson was trying to trick anybody. I don't know that he was trying to invite anybody. I think as a trier of fact, he may have been legitimately trying to figure out what this expert's opinion was and the scope of that testimony. A thousand percent. I mean, I couldn't agree more. That's exactly what he was trying to do, was to understand it. And this wasn't the first time this came out. The reason he then says, isn't that your testimony? He says later, I want to get that clarification. This was not the first reference to it. He had already had several exchanges with counsel for Edison, where Edison is putting on its case and putting on its witnesses or cross-examining witnesses and saying, these changes really weren't that significant. They were just a name change. And twice the judge says to counsel for Edison, why are you talking about name changes? Why are you doing that? I don't understand what you mean. And at one point he even says, and this is at Volume I on the 1021 testimony, describing the plaintiff's argument, quote, the argument is that the duty on the part of the defendant was not just the decision regarding a class share at the inception, but to monitor the fund and transfer the institutional share as soon as eligible. He's saying this to counsel for Edison, who then responds in all of these different exchanges, well, I don't understand that to be their argument. I think you're going to hear from Dr. Pomerantz, who's going to say it's only significant changes. And the judge says, okay, well, I will hold Mr. Pomerantz to whatever it is he says when we get there. So this is the moment when the judge, having heard this already about significant changes, already expressing confusion or misunderstanding, trying to, you know, he wasn't yet confused. I assume, if you are correct, that plaintiffs were pursuing a more difficult theory than they needed in order to find a violation of duty on the part of the plan. Well, we don't know that. I mean, the most important thing for our purpose is they were pursuing the theory they chose to pursue. They certainly could have pursued a You have a duty not only to evaluate the ongoing performance of the fund and ensure that it's a good fund, but also to look for cheaper alternatives. And it's not clear to me that they would have succeeded on that. That's actually a harder theory than they're letting on now. Because if you go down that road, of course, if you say, well, you should have gotten a cheaper share class in this one fund, well, then why not when you are looking at the funds to see if there's cheaper alternatives, maybe you should look at the whole market. Maybe it would be a breach of fiduciary duty to do that. Well, talking about a cheaper market, the plaintiff says in their recently filed reply brief that you admit the plan never considered the cheaper institutional shares during the period after the initial selection. Is that in the record? It's not in the record. But what is in the record was the nature of the periodic review process, which did, was a state-of-the-art process which Mr. Pomerantz took care not to criticize. But that process evaluated funds in the line-up, evaluated the money market fund in the line-up, compared to benchmarks, ensured that it remained a good fund, a good selection. And it was not among those criteria to go out on a weekly, monthly, quarterly, annual basis to look and see for each of the funds in the line-up. This is the nature of the argument when you really think about it. For each of the funds, is there a cheaper fund out there? Is there some reason we should do something different? Now, it seems relatively easy with respect to just changing the share class, but even that's not so easy because it's actually a different investment. In many cases, it's not just pressing a button and saying we're going from, you know, investment A to investment A prime. You actually have to remap the investment in many of these situations. And so you get the exact same concerns about participant confusion. They get a new prospectus. They can't find it necessarily because you don't know at this time frame whether each of the funds have the same credibility, equal reporting at the USA Today, that kind of thing. So it's not so obvious that you just, as Justices Kagan and Chief Justice Roberts, were speculating without a record, which is why courts shouldn't do things without a record, that it would have been easy. But none of that is before the court right now. The point is, they could have made all those arguments. Nothing in Judge Wilson's summary judgment order, nothing he said at trial, remotely suggested. You argue that, let's assume for the moment there's no forfeiture of their claim. How can we rule on the merits of a claim when plaintiffs did not present the theory at trial, where the district court hasn't had a chance to rule on it in the first instance? We can't really do that, can we? Well, I mean, I certainly think it's, the real issue here is whether they had a chance to raise it, both at trial and on appeal. Our point is simply that if you get past that, there is a record. And it's not contradicted that we had a state of the art monitoring process. And clearly, Dr. Pomerantz had the opportunity to say something about the monitoring process, and he never criticized it. So given that uncontradicted record, that's our only point on that. But I do think the relevant point is forfeiture. And it's not just at trial, Your Honors. When it comes to appeal, the argument now is, the judge in a summary judgment order, as I said to the U.S. Supreme Court, told us that we couldn't prove our case unless we proved changed circumstances. So you would expect, the last time we were before this court, that their brief would have been up and down, frontwards and backwards, complaining about the fact that they were required to prove changed circumstances. You won't see that in their appellate brief. The phrase, changed circumstances, doesn't appear anywhere in the argument section. Significant changes, doesn't appear in the argument section. Initial review, doesn't appear anywhere in their opening brief. The argument nowhere criticizes the district court for having allegedly restricted them to proving changed circumstances. This court, I think, understood exactly what happened, which was that the plaintiffs chose to make a changed circumstances argument. That's how Dr. Pomerantz thought he could prove his case. The district court rejected that on its merits, on the facts, and on appeal. What the plaintiffs argued was a different kind of argument, that as they themselves put it in their brief, that it is permissible, effectively, to challenge an initial decision, and then the continued retention, without more, as this court's opinion put it, because ERISA recognizes, as they put it, incorporates the continuing violations doctrine. In the reply brief, they said the continuing violations doctrine is inherent in the statute. That was their argument. That's the argument we responded to, and that's the argument this court rejected by saying, without more, then you're just arguing, you're just challenging that initial breach. This court recognized there was an ongoing duty to monitor. It quoted from the Kwan case, specifically said, fiduciaries are required to act prudently when determining whether or not to invest, or whether or not to continue to invest. That was this court's recognition of the duty, and it simply said, and here, therefore, the district court was perfectly appropriate, did exactly the right thing in allowing plaintiffs to put on evidence of changed circumstances. So why did the district court take it in? We tried to get them not to. We argued in the opposition, it wasn't presented. We argued in our opening brief before them that everybody agreed on the legal question, and the court, you know, what it did do, importantly, was accept what both sides said, which is there is this ongoing duty to monitor, and then said, this court didn't address the scope of the duty, which is true, this court didn't address the scope of the duty, and then basically in the last paragraph said, and there's a reason maybe why this court didn't address the scope of the duty, because, as Edison argues, the plaintiffs didn't argue that kind of argument, so we're going to remand to allow this court to determine whether or not that's what happened, and, Your Honors, that's exactly what happened. They had the opportunity to raise this argument at trial. They had the opportunity to argue about it on appeal, and they didn't. Thank you. Thank you, counsel. Mr. Wolf? Can you address, the opposing counsels indicated that in your opening salvo, your opening brief in the 2013 appeal, you did not indicate that the district court erred in its summary judgment, or precluded you from making the kind of argument you now say you would have made. Can you cite to a page in your opening of prior appellate brief? Your Honor, in the 50 seconds that I have, I can't give you the chapter and verse on that, but we did argue that that was the entire argument in this appeal. I've said it till I'm blue in the face. Fiduciaries have a duty to remove imprudent investment options regardless of when they were first included. If, as Mr. Hacker insistently tries to say, I'm just arguing continuing violation, I would have said the breach, the damages goes back to the date that they first put those funds in the plant. I've never said that. I said it's only the breaches that occur within six years before the complaint are actionable. Anything before that is no longer actionable because of the statute of limitations. It is in the record that they intentionally did not regard cheaper share classes and switch share classes because of participant confusion. Additional excerpts of record, page 73, page 85, and page 93, is the testimony of their witnesses that say that very thing. So that was in the record. One final point. If there was a basis for affirming the district court summary judgment order, that we could have argued all of this at trial and therefore we waived the argument we're trying to assert on appeal, that would have been in Edison's brief. They didn't make that argument because they recognized we couldn't have argued any of this at trial in light of the summary judgment order. Instead, what Edison contended in its appellate brief is the district court was correct and plaintiffs could not argue for the removal of these pre-2001 retail mutual funds without changed circumstances. And that is what they argued. They have therefore waived this claim that we could have asserted it at trial as a basis for affirming what the district court ultimately did. Thank you, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: Goodwin, O'scannlain, Zouhary